IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Ronald Bernard Jones, #266520, ) | |
| ) | Civil Action No. 6:10-1069-DCN-KFM |
| Plaintiff, ) | |
| ) | **O R D E R** |
| vs. ) | |
| ) | |
| H. Wayne DeWitt, Sheriff of Berkeley ) | |
| County, and Sergeant Sanders, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 36). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

The defendants filed a motion for summary judgment on October 18, 2010. On October 19, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. The plaintiff filed a response in opposition to the motion on November 18, 2010, and the defendants filed a reply on November 30, 2010.

## FACTS PRESENTED

The plaintiff alleges that while he was a pretrial detainee in Berkeley County's Hill-Finklea Detention Center ("HFDC") the defendants were deliberately indifferent to his serious medical needs. Defendant Wayne DeWitt is the Sheriff of Berkeley County, and

defendant Sgt. Sanders is employed with the Berkeley County Sheriff's Department. The plaintiff is currently incarcerated at Manning Correctional Institution. The plaintiff was housed at the HFDC while awaiting trial from June 27, 2008, until being transferred to the South Carolina Department of Corrections ("SCDC") on or about June 21, 2010.

Records show that the plaintiff was seen and treated by dentists outside of the HFDC on several occasions (def. m.s.j., ex. 4). The plaintiff was transported from the HFDC to dentists Kunkle & Kunkle in Moncks Corner on the following dates: October 13, 2009; February 16, 2010; March 1, 2010; and March 23, 2010 (*id.*; Sanders aff. ¶ 5; def. reply, ex. 1). On February 16, 2010, the plaintiff had a tooth removed. On March 1, 2010, the dentist removed decay from one tooth and removed another tooth. According to the treatment notes, the plaintiff requested that the tooth be removed at a prior office visit, but the dentist felt the plaintiff's blood pressure was too elevated for it to be safe. The dentist asked that the detention center have the plaintiff seen by a physician. The plaintiff was seen by a physician and was placed on two kinds of blood pressure medicine. On March 23, 2010, the plaintiff presented for suture removal, but the suture had already fallen out. The dentist noted that the plaintiff was healing well, and he was having "no problems with the area." The dentist informed the plaintiff that he had some areas of decay around two teeth and a crack in another. The plaintiff stated that he would like to revisit the dentist when he was let out of prison "for a complete upper denture." There was no order for a return or follow-up visit (def. reply, ex. 1).

On April 28, 2010, the plaintiff was involved in an altercation with another inmate at the HFDC (def. m.s.j., ex. 5, 6). Following the incident, the plaintiff was transported by EMS to Trident Regional Medical Center for injuries received in the altercation (*id.*, ex. 7). The plaintiff was treated for closed head injury, abrasion to the head, and contusion to the scalp; there were no complaints by the plaintiff regarding a "bad tooth" recorded in the hospital's Emergency Department record (*id.*, ex. 8).

In his complaint, the plaintiff contends that he "is suffering and in pain from having a bad tooth and needs to get it pulled out" (comp. at 3). The plaintiff attached to his complaint an Inmate Request Form addressed to Sgt. Sanders on April 15, 2010, in which he asked for a dental appointment so that he could "get that other bad tooth out." He complained that his tooth was sensitive to temperature and hurt when he ate (*id.*; comp., ex. 2). Sgt. Sanders responded on the form, "No more dentist - no more money - have your family finish your teeth" (comp., ex. 2). The plaintiff seeks $75,000 in damages from each of the defendants (comp. at 5).

In her affidavit submitted in support of the defendants' opposition to summary judgment, Sgt. Sanders testified that she transported the plaintiff on three occasions to an outside dentist for treatment. She testified that the decision of when and whether to transport an inmate/detainee for outside dental care is made by the HFDC physician. Sgt. Sanders is unaware of any additional referrals made for the plaintiff other than the dentist visits described above (Sanders aff. ¶¶5-6).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990)

(citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988)).  The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976).  This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services.  *Id.*  The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105.  Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.  As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach.  *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987).  A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991).  "Deliberate indifference may be demonstrated by either actual intent or reckless disregard.  A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Burton*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted).  "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106.  Mere negligence or malpractice does not violate the Eighth Amendment.  *Id.*  Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

5

The plaintiff's claim fails on the merits. He can prove neither the objective nor the subjective elements of a deliberate indifference claim. The evidence shows that the plaintiff was taken on several occasions to an outside dentist (def. m.s.j., ex. 4; def. reply, ex. 1). At his last visit on March 23, 2010, there was no order for a return or follow-up visit (def. reply, ex. 1). Sgt. Sanders testified that the decision of when and whether to transport an inmate/detainee for outside dental care is made by the HFDC physician. Sgt. Sanders is unaware of any additional referrals made for the plaintiff other than the dentist visits described above (Sanders aff. ¶¶5-6). If the plaintiff's tooth was causing him pain, the proper remedy would have been to request to be seen by the detention center physician, as he was well aware. In an attachment to his complaint, the plaintiff quoted the detention center's medical rules as follows: "To be seen at sick call, you must complete an 'Inmate Medical Request Form' and place it in the mailbox in the pod. Outside medical care, such as private doctors, must be approved by Deputy Director and/or the medical staff. . . ." (comp., ex. 1).

Furthermore, the plaintiff has failed to allege that defendant Sheriff DeWitt personally acted or failed to act in violation of his constitutional rights in this regard. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail."). Sheriff DeWitt submitted an affidavit in support of the motion for summary judgment stating that he has never personally met the plaintiff and has no personal knowledge of any lack of dental care as alleged by the plaintiff (DeWitt aff. ¶¶ 5-6). Furthermore, to the extent the plaintiff seeks to hold Sheriff DeWitt liable in his supervisory capacity, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29. The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a

pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.). The plaintiff has failed to make such a showing here. *See Miltier*, 896 F.2d at 854 (to bring claim alleging denial of medical treatment against non-medical supervisory prison personnel, inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct).

### *State Law Claims*

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c).

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment (doc. 36) be granted.

s/Kevin F. McDonald
United States Magistrate Judge

February 8, 2011

Greenville, South Carolina